IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


GWENDOLYN I. ROBINSON et al.   *
                               *
                               *
v.                             *   Civil Action No. WMN-14-2563
                               *
HARLEY E. DUNLAP et al.        *
                               *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Defendant Harley E. Dunlap is employed by the Department of
Homeland Security as a Chemical Security Inspector.  On January
14, 2011, he was involved in a motor vehicle accident while
driving his government-owned vehicle through Maryland.  A
personal injury lawsuit arising out of that accident was filed
against Defendant in the Circuit Court for Prince George's
County, Maryland, which was later transferred to the Circuit
Court for Frederick County, Maryland.  Defendant then filed a
"Petition for Certification Pursuant to 28 U.S.C. 2679(d)(3)
That He Was Acting Within the Scope of His Employment as a
Federal Employee and Request for Hearing" (Petition for
Certification).  ECF No. 2.  On the ground that this petition
created federal question jurisdiction, the United States removed
the action to this Court.  The Petition for Certification is now
fully briefed.  Upon review of the papers filed and the
applicable case law, the Court determines that no hearing is

necessary and that the Petition for Certification will be denied.

The pertinent facts are largely undisputed and are as follows. Defendant lives in Canfield, Ohio. As a Chemical Security Inspector, he was issued a government-owned vehicle to be used to travel from his home to various chemical plants in the region near his home that he has been charged to inspect. When not inspecting chemical facilities, Defendant works from home and he has a complete government office suite in his home. His home is, in fact, identified as his duty station.

In December of 2010, Defendant was notified that he was selected to attend a training course at the Coast Guard Training Center in Yorktown, Virginia, to be held from January 3-20, 2011. His travel authorization provided that he was to travel from Canfield, Ohio, to the Williamsburg/Yorktown, Virginia, area on January 2, 2011, and return to Canfield, Ohio, on January 21, 2011, using his government-owned vehicle. ECF No. 2-2. Lodging for that entire period was provided to Defendant in a Williamsburg hotel.

On the morning of Friday, January 14, 2011, one of the course instructors announced that the training class would be releasing students early for the long Martin Luther King Day weekend. Classes were to recommence on Tuesday, January 18,

2011.  Defendant determined to return home for the long weekend
to Canfield, Ohio, which was approximately 450 miles away, and
he left the Williamsburg/Yorktown area about 2:30 in the
afternoon.  Defendant indicates that he was returning home, in
part, to attend his son's archery competition with his family.
At about 4:40 that afternoon, while driving through Maryland, he
was involved in the automobile accident giving rise to this
action.

On March 8, 2011, Defendant's immediate supervisor, Keith
Nix, issued a Letter of Reprimand to Defendant as a disciplinary
response to Defendant's unauthorized use of his government-owned
vehicle.  ECF No. 34-1 at 34-35.  After Defendant was sued, the
Government denied his request to certify that he was acting
within the scope of his federal employment at the time of the
accident.  Where the Government denies such a request, the
employee can petition the court to find and certify that the
employee was acting within the scope of his employment, 28
U.S.C. § 2679(b)(3).  This Defendant has done.

A determination that a federal employee was acting within
the scope of his employment when his act or omission caused
injury to another is significant in two major respects.  First,
under the provisions of the Federal Tort Claim Act (FTCA), a
party may recover damages from the United States for injury

3

"caused by the negligent or wrongful act or omission of any
employee of the Government while acting within the scope of his
employment or office."  28 U.S.C. § 1346(b) (emphasis added).
In addition to imposing liability on the Government, a finding
that the employee was acting within the scope of his employment
also provides immunity for the employee from damage claims.  28
U.S.C. § 2670(b)(1) (providing that the remedy against the
United States for injury "arising or resulting from the
negligent or wrongful act or omission of any employee of the
Government while acting within the scope of his office or
employment is exclusive of any other civil action or
proceeding") (emphasis added).  Whether a federal employee was
acting within the scope of his employment is determined under
the law of the State where the alleged negligent or wrongful act
or omission occurred.  28 U.S.C. § 1346(b)(1); Jamison v. Wiley,
14 F.3d 222, 237 (4th Cir. 1994).  Since the accident giving
rise to this action occurred in Maryland, Maryland's respondeat
superior rules govern the scope of employment determination.

     Under Maryland law, "the general test . . . for determining
if an employee's tortious acts were within the scope of his
employment is whether they were in furtherance of the employer's
business and were 'authorized' by the employer."  Sawyer v.
Humphries, 587 A.2d 467, 470 (Md. 1991).  In applying this test,

Maryland courts have found the following considerations to be
pertinent:

> To be within the scope of the employment the conduct
> must be of the kind the servant is employed to perform
> and must occur during a period not unreasonably
> disconnected from the authorized period of employment
> in a locality not unreasonably distant from the
> authorized area, and actuated at least in part by a
> purpose to serve the master.

Id. at 471 (citation omitted).

In the context of accidents involving an employer's
vehicle, Maryland courts have recognized that "[m]ere ownership
of a car does not impose liability for injuries caused in the
driving of it." Toscano v. Spriggs, 681 A.2d 61, 64 (Md. 1996).
While there is a presumption that the operator of a vehicle is
the agent of the owner, id., that presumption can be completely
rebutted as a matter of law where the undisputed facts establish
that the employee was not acting on the employer's behalf at the
time of the accident.  As the Government observes, there are
numerous Maryland decisions dating back to the time of horse-
drawn wagons holding that, where an employee is using a company
conveyance for purely personal reasons, he is acting outside of
the scope of his employment and the employer is not liable for
any injury that may result from that use.  ECF No. 34 at 5-7.

For example, in Tregellas v. American Oil Company, the
Maryland Court of Appeals held that the presumption of scope of

employment was completely destroyed where the evidence
established that the salesman-employee was using his company
furnished vehicle to return to his home in Hyattsville, Maryland
after a weekend visit with his parents in Baltimore.  188 A.2d
691, 696 (Md. 1963).  Similarly, in Wells v. Hecht Brothers &
Company, the court held that the presumption that a company
employee was acting within the scope of his employment was
rebutted, as a matter of law, where he was returning home in his
company truck from a farewell party given for his manager.  142
A. 258, 261 (Md. 1928).  In both cases, the employee's immediate
supervisor was aware of the personal use of the employer's
vehicle, although that use was against official policy.
Tregellas, 188 A.2d at 692; Wells, 142 A. at 259.

Like the employees in Tregellas and Wells, Defendant was
using his government-owned vehicle for the purely personal
purpose of returning to his home.  Unlike those employees,
Defendant lacked even the unofficial permission of his
supervisor to use the vehicle for this purpose.  See ECF No. 34-
1, Decl. of Keith Nix (noting that "[a]t no time prior to the
January 14, 2011 incident did Mr. Dunlap contact anyone [] in
his chain of command to obtain authorization to amend his travel
orders to enable him to travel back to his home and permanent

duty station").[1]  Plaintiff essentially concedes that the purpose
of his use of the vehicle was personal, i.e., to return home to
be with his family over the long weekend.[2]

   In support of his Petition for Certification, Defendant
offers no citation to any Maryland legal authority aside from
his citation to the general test for scope of employment set out
in Sawyer v. Humphries.  Avoiding any discussion of the relevant
Maryland case law, Defendant instead proffers a somewhat
convoluted and at times inconsistent argument based on his
interpretation of the United States Code and the Code of Federal
Regulations.  He appears to argue that, because his home is also
his permanent duty station, he was permitted to return his
government-owned vehicle to his home without seeking amendment
of his travel orders.  ECF No. 2 at 3 ("[Defendant] was
returning to his permanent duty location over a government
approved holiday/approved liberty to park his government

_____

[1] Although Defendant mentioned that the Coast Guard instructor
"granted liberty to all students seeking to travel" over the
Martin Luther King Day weekend, ECF No. 2 at 2, he makes no
argument that this instructor somehow had authority to alter or
amend his travel orders.

[2] In his Petition for Certification, Defendant acknowledges that
he was returning home to attend his son's archery competition.
ECF No. 2 at 3.  In his reply brief, he suggests for the first
time that he "intended to also do work while at his Permanent
Duty Station." ECF No. 38 at 5.  Defendant offers nothing to
support this newly-minted justification for his decision to
return to Ohio.

vehicle.  His government vehicle is assigned to his permanent
duty location.").  As explained below, that explanation appears
to be related to Defendant's contention that he was provided a
government-owned vehicle under a particular home-to-work
provision applicable to employees who are "'essential for the
safe and efficient performance of intelligence,
counterintelligence, protective services, or criminal law
enforcement duties.'"  ECF No. 2 at 6 (quoting 5 U.S.C. §
1344(a)).

    In the Letter of Reprimand, Defendant's supervisor noted
that "[w]hile on [official government travel], the previous
authorization you received to utilize a [government-owned
vehicle] between your place of work and your home is suspended
(41 CFR 102-5.20) until your return from official travel."  ECF
No. 34-1 at 34.  By way of background, 41 C.F.R. § 102-5 governs
"Home-to-Work Transportation" for federal employees.  The
subpart quoted in the Letter of Reprimand, id. at § 102-5.20
(entitled, "Who is not covered by this part?"), provides that
employees who are on temporary duty are not covered under part
102-5.  Defendant's supervisor took the position that, as long
as Defendant was on this temporary duty assignment, Defendant
was not authorized to use his government-owned vehicle to drive
home for the weekend.

Defendant responds that, while the Government is correct that "for most users of a [government-owned vehicle], 41 C.F.R. § 102-5.20 does suspend the regular rules of usage" related to that vehicle, "41 C.F.R. part 102-5 never applied to Defendant in the first place." ECF No. 2 at 7. In reaching that conclusion, Defendant suggests that his use of the vehicle was at all times controlled by 5 U.S.C. § 1344(a)(2)(B), which is quoted above. Defendant reasons that, because he works as a Chemical Security Inspector in the "Department of Homeland Security's National Protection and Programs Directorate's Office of Infrastructure Protection," his job duties fall within the class of "intelligence, counterintelligence, protective services, or criminal law enforcement." ECF No. 2 at 6.

In opposing the Petition for Certification, the Government protests that Defendant was never provided a government-owned vehicle under § 1334, but instead, was granted use under a provision that authorizes home-to-work transportation for employee engaged in "field work." See 41 C.F.R. § 102-5.35. As evidence of the true nature of Defendant's authorization, the Government submitted the "Authorization for Home-to-Work Transportation" signed by former Department of Homeland Security Janet Napolitano in which she authorized the use of government vehicles for all Chemical Security Inspectors under the "Field

Work Provision."  ECF No. 34-1 at 32; <u>see also</u>, <u>id.</u> at 28 (the portion of "Government Vehicle Usage and Controls Standard Operating Procedure" stating that inspectors were granted home-to-work authority based upon the "Persons Engaged in Field Work" category).  Defendant offers no evidence to challenge this evidence.[3]

Given that, under Maryland law, Defendant's use of the government-owned vehicle to return to his home was clearly not within the scope of his employment and that the argument he attempts to construct on federal statutes and regulations lacks any foundation, the Court concludes that Defendant's Petition for Certification must be denied.  Under 28 U.S.C. § 2679, when, like here, a case has been removed to a federal district court from a state court after the filing of a Petition for Certification and "the district court determines that the employee was not acting within the scope of his office or

---

[3] In his reply memorandum, Defendant protests that "the Government has not proven its assertion that [Defendant's] use of the vehicle was under the 'home-to-work' rather than the 'protective service' authorization because it has failed to provide the best evidence of that authorization."  ECF No. 38 at 1.  Defendant correctly states that authorizing the use of government-owned vehicles is a non-delegable duty possessed solely by the Secretary of the Department.  Defendant, however, apparently did not recognize that the document submitted by the Government was the order signed by Secretary Napolitano.  In its surreply, the Government further clarified that the document it submitted with its opposition was the relevant authorization from Secretary Napolitano.

employment, the action or proceeding shall be remanded to the State Court." 28 U.S.C. § 2679(d)(3). There being no other basis for the jurisdiction of this Court, the Court will also remand this action to the Circuit Court for Frederick County, Maryland. A separate order will issue.

_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: November 26, 2014